UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, </br></br> Plaintiffs, </br></br> -vs- </br></br></br> WALMART, INC. and WAL-MART STORES EAST, LP, </br></br> Defendants. | Civil Action No. 1:22-cv-2596-JFA-TER </br></br></br></br></br> **ORDER** |

**I.     INTRODUCTION**

This case arises from Charging Party Luis Quinones's employment with Defendants Walmart, Inc and Wal-Mart Stores East, LP (hereinafter, "Walmart"). Plaintiffs assert causes of action for violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981. Presently before the court is Plaintiff's Motion to Compel (ECF No. 31). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(g), DSC. A hearing was held on December 7, 2023, via telephone conference.

**II.     FACTUAL ALLEGATIONS**

Quinones was born without the lower half of his right leg, part of four fingers on his left hand, and two whole fingers on his right hand. Quinones also has advanced degenerative joint disease and arthritis in both knees and uses a prosthetic on his right leg to ambulate.

On or around November 29, 2019, Walmart hired Quinones as a part-time Sales Associate at its retail store located at 2035 Whiskey Road, Aiken, South Carolina, known to Walmart as

Walmart Store #0514 ("Store #0514"). Quinones's duties included stocking items, re-stocking misplaced or returned items, and adjusting products on store shelves in the Garden Center. On his first day of work, Quinones requested a reasonable accommodation to allow him to perform the essential functions of his job. Quinones was instructed to submit a request for accommodation through Walmart's Accommodation Service Center ("Walmart's ASC"), which he did. A Walmart Manager told Quinones to use one of the store's electric shopping carts ("electric cart") to perform his duties while his request for accommodation was being processed.

Between approximately December 2019 and July 2020, Quinones regularly used an electric cart during his work hours and met or exceeded Walmart's legitimate performance expectations. On June 9, 2020, a Walmart Human Resources Representative informed Quinones that electric carts were for customer use only, and that he needed to formally request an accommodation through Walmart's ASC. Quinones again placed another request and continued to use an electric cart to perform his duties. On or about July 15, 2020, Walmart determined that Quinones was not qualified to perform the essential functions of the Sales Associate position and reassigned him to a Self-Checkout Host position. Quinones articulated to Walmart that he could not perform the duties of a Self-Checkout Host position due to his disability and was therefore placed on indefinite unpaid leave by Walmart on or about July 15, 2020. During the interactive process, Quinones requested reassignment to a Greeter or Fitting Room Attendant position, which Walmart denied.

On or about August 3, 2020, Walmart's ASC reversed its prior decision and determined that Quinones was indeed able to perform the duties of the Sales Associate position with the use of a personalized motorized cart. Quinones does not own or use a motorized cart in his daily life, and his finances do not permit him to purchase one. Am. Compl. ¶¶ 17-45.

### III.  DISCUSSION

As part of its discovery in this case, the EEOC served upon Walmart a Request for Entry Upon Land and Inspection pursuant to Rule 34 of the Federal Rules of Civil Procedure. The EEOC argues that its request is necessary to assess Walmart's undue hardship defense and its position regarding Mr. Quinones's ability to perform the essential functions of various job positions. See Answer ¶¶ 67-68 (ECF No. 30) ( "[A]ny accommodation Mr. Quinones may have requested under the ADA would have imposed an 'undue hardship' on Defendant, and therefore Defendant was not required to accommodate him,", and they "made good faith efforts…to identify and make a reasonable accommodation that…would not have caused an undue hardship on the operation of Defendant's business."). Specifically, the EEOC seeks permission for its counsel and expert witness to enter Store #0514 to

> [i]nspect, examine, photograph (or electronically record), video, and observe the property, including the Garden Center, all stockrooms, employee breakrooms, employee meeting rooms, all charging stations available for electric carts including those located in employee-only areas, all self-checkout lanes, and all areas where the self-checkout hosts perform their essential job duties, and all locations at the property where Luis Quinones was employed during the relevant time period.

Request for Entry (ECF No. 31-2). The EEOC also requested to observe employees performing the essential functions of a Self Checkout Host and a Sales Associates assigned to the Garden Center. Request for Entry.

Walmart served responses rejecting the EEOC's requests as overly broad, unduly burdensome, disproportional to the needs of the case, irrelevant, and because it seeks information and access that could more easily be provided by Defendant through more convenient, less intrusive, less burdensome, and less expensive means. Def. Resp. (ECF No. 31-3). Defendant asserted that

it could not assure that Store #0514 was the same or even similar to appearance or operation as it was in 2020 when Mr. Quinones last worked. Defendant also asserted that an observation of a Self Checkout Host and Sales Associates assigned to the Garden Center for a limited period of time on one day could not reliably establish all or even most of the essential functions of these positions because some essential functions may not be performed on a daily basis.[1]

To attempt to address Walmart's concerns, the EEOC proposed a more limited request for entry, seeking entry to "inspect, measure, survey, photograph (or electronically record), video, and observe the property, including all locations where Luis Quinones performed the essential functions of a Sales Associate during the relevant time period," as well as areas where employees perform the essential functions of a Self-Checkout Host, Greeter, and Fitting Room Attendant. EEOC Letter (ECF No. 31-4). Walmart again rejected the more limited request, asserting that it did not alter the basis for its original objections. The present motion followed.

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). Rule 34(a) allows parties to obtain relevant discovery by entering and inspecting physical property controlled or owned by the other party:

> A party may serve on any other party a request within the scope of Rule 26(b)…(2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a)(2).

The court must limit the frequency or extent of discovery if it determines that:

---

[1] At the hearing, Defendant asserted that the job description specifically for the Self Checkout Host position had changed since the charging party was actively employed by Defendant.

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1) [regarding relevance and proportionality].

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). In addition to the general rules for limiting discovery, a court reviewing a request for entry and inspection must conduct "a greater inquiry into the necessity for inspection" because "entry upon a party's premises may entail greater risks and burdens than mere production of documents. . . . [Therefore,] the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." Belcher v. Bassett Furniture Indus., Inc., 588 F.2d 904, 908 (4th Cir. 1978) (footnote omitted). The party seeking discovery must establish its relevancy and proportionality. EEOC v. Akebono Brake Corp., No. 3:16-3545-CMC-SVH, 2018 WL 1365796, at *2 (D.S.C. March 16, 2018) (citing Accolla v. Speedway, LLC, No. 0:17-1972-JMC, 2017 WL 5523040, at *2 (D.S.C. Nov. 17, 2017)). The objecting party, however, holds the burden of convincing the court that the inspection request is unnecessary. Akebono Brake Corp. at *2 (citing N.C. Env't Justice Network v. Taylor, No. 4:12-154- D, 2015 WL 1630602, *3 (E.D.N.C. Jan. 14, 2015); see also Accolla at *2 ("the party objecting has the burden of showing the discovery should not be allowed…").

The EEOC argues that its requests are relevant to its failure to accommodate claim under the ADA. One of the requirements for establishing a prima facie case of discrimination based on a failure to accommodate is that the employee, with reasonable accommodation, could perform the essential functions of the position. See Wilson v. Dollar General Corp., 717 F.3d 337, 345 (4th Cir. 2013). The EEOC argues that while Walmart's written job descriptions are helpful in analyzing

whether Quinones could perform the essential functions of various positions, "the best evidence is an observation of the time employees actually spend performing those tasks listed in the job descriptions and the work experience of Walmart's employees in those positions." Pl. Motion p. 7 (ECF No. 31-1). Plaintiff also argues that Walmart put at issue the physical nature and operation of Store #0514 by asserting the defense that accommodating Quinones would have imposed an undue hardship on its business operations.

Plaintiff notes that EEOC's regulations state that when determining whether a particular job function is essential, relevant evidence includes

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). However, Plaintiff fails to show why other forms of discovery are not sufficient to provide evidence of the essential functions of the job positions at issue or why observation of employees performing the functions of their positions is necessary. See, e.g., EEOC v. Life Tech. Corp., 2010 WL 11553083 at *2-3 (D.S.C. May 13, 2010) (denying entry and inspection request where "information obtained through the EEOC's proposed inspection would be largely duplicative of discovery already obtained through other means"); Belcher, 588 F.2d at 910 ("[t]he information concerning job desirability, if that is to be the subject of the expert's inspection, can be obtained far more easily and reliably in the judicial atmosphere surrounding deposition than in the inspection atmosphere anticipated by the order").

Walmart notes that, as set forth in both the amended complaint and the answer, it originally determined that Mr. Quinones could not perform the essential functions of the Sales Associate position because Mr. Quinones' requested accommodation was for Walmart to provide him with unlimited use of a motorized cart, which it was and still is unable to do. Am. Compl. ¶ 38; Answer ¶ 38. When Walmart reconsidered Mr. Quinones' request for an accommodation and concluded that he could use his own personal cart, Walmart admitted that he was qualified to perform the essential functions of the Sales Associate position. Am. Compl. ¶ 43; Answer ¶ 43.  Thus, Defendant argues, the issue of whether Mr. Quinones could perform the essential functions of the Sales Associate position depends on who provided the cart – Walmart or Mr. Quinones himself. It does not depend on what those essential functions were or how employees perform such functions on a daily basis, such that observation of employees completing those functions is necessary.  Further, with respect to the Greeter and Fitting Room Attendant positions, Walmart noted that it has not taken the position that Mr. Quinones was unqualified or could not perform the essential functions of those positions but that Mr. Quinones never requested to be relocated into those positions.  Am. Compl. ¶ 42; Answer ¶ 42. Thus, Walmart argues, physical observation of employees performing those jobs is not relevant to the claims in this action.

In addition, courts have held that a limited observation of employees performing their jobs is not likely to establish what the essential functions of a position are or how they are performed on a regular basis. See, e.g., EEOC v. Vicksburg Healthcare, LLC, No. 3:13-cv-895-KS-MYP, 2015 WL 1821581, *4 (S.D. Miss. 2015) (observing that "it is unlikely that the three-hour inspection Plaintiff wishes to conduct would reliably establish which tasks LPNs commonly perform or which equipment they commonly use"); EEOC v. Burlington Northern Santa Fe R.R., No. 12-2634-JWL,

2014 WL 988770 at *3 (D. Kan. Mar. 13, 2014) (noting that inspection and observation of a locomotive electrician position would be of little value because "the essential functions of the position are not necessarily performed every day or even every month," and the tasks performed by the employee could vary widely on any given day); but see EEOC v. Burlington Northern Santa Fe R.R., No. 2:12-CV-02634-JWL, 2014 WL 172141, at *3 (D. Kan. Jan. 15, 2014) (agreeing "as a general proposition that an inspection of the workplace to help Plaintiffs' experts determine whether a claimed work function is 'essential,' and whether [the employee] could perform the function with or without reasonable accommodation, could be proper).

Walmart also asserts that neither the Amended Complaint nor Walmart's affirmative defenses puts the physical layout and operation of Store #0514 at issue. In the Amended Complaint, the EEOC alleges that "Mr. Quinones notified Defendant of his limited ability to stand for long periods and walk long distances . . . [and] Mr. Quinones requested an alternative reassignment to a position more in line with his physical abilities . . . that would not require extended periods of standing or walking and were not as physically demanding as the Self Checkout Host position." Am. Compl. ¶¶ 23, 42 (ECF No. 26). The EEOC makes no allegation that there are physical barriers in Store #0514, that the layout of the store hindered Mr. Quinones's ability to work with or without an electric cart, or any similar issue related to the store's appearance or structure. The allegations in the Amended Complaint focus on the distance and period of time Mr. Quinones is able to stand or walk – not where he is able to stand or walk or whether physical barriers prevent him from standing or walking.

In addition, Walmart's undue hardship defense does not put at issue the physical layout of Store #0514 such that an inspection of the premises is necessary. Walmart asserts in its response to

Plaintiff's motion that its undue hardship defense is based primarily on the financial and logistical impact, as well as the effects on customer service, of providing electric carts for employee use, rather than any issue that use of an electric cart would create as a result of the physical layout or operations of the store. This assertion is supported by the allegations that Walmart allowed Mr. Quinones to use one its electric carts for a period of time while it considered his request for accommodation and then ultimately decided that Walmart could accommodate Mr. Quinones's disability by allowing him to use his own electronic cart. EEOC regulations regarding how to analyze an undue hardship defense focus on the financial and operational impacts the requested accommodation has on the employer. See 29 C.F.R. § 1630.2(p).

Courts have held that where there are no issues regarding physical access to or physical barriers within a location, as is the case here, entry and inspection of the location is not relevant or proportional to the needs of the case. See, e.g.,United States ex rel. Adams v. Remain at Home Senior Care, LLC, No. 1:17-cv-1493-JMC, 2021 WL 3285300, *4-5 (D.S.C. Aug. 2, 2021) (holding that the plaintiff failed to show that inspection of the defendant's offices was necessary where the plaintiff was interested only in the contents of the file room and not the layout of the office or file room); Akebono Brake Corp. at *5 (noting whether physical premises are an issue as a relevant factor in analyzing request for inspection); King v. Northwest Community Hosp., 2010 WL 11712049 at *2-3 (N.D. Ill. June 28, 2010) (collecting cases involving "claims that turn directly on the condition and use of the premises in question" and where "the specific layout of the premises was directly relevant to the plaintiff's claims").[2]

---

[2] See also Life Tech. Corp., 2010 WL 11553083 at *3 (noting that deposition testimony concerning essential functions would provide a more accurate understanding of those functions rather than videotaping on one particular day, in part, because "people behave differently when

Finally, Walmart notes that a site inspection of store #0514–where EEOC representatives and experts would frequently stop throughout both public and non-public areas of the store to "inspect, measure, survey, photograph (or electronically record), video, and observe" – would create disruptions and distractions for both Walmart associates and its customers. In sum, at this stage of the litigation, Plaintiff fails to show that its request for entry and inspection of store #0514 is relevant or proportional to the needs of the case and Walmart has shown that the requested discovery is unnecessary and burdensome such that denial of Plaintiff's motion is appropriate at this time. As stated above, much of the information sought by Plaintiff through inspection and observation at store #0514 could be obtained through other forms of discovery. Therefore, while a request to inspect may be appropriate after further discovery and development of the issues, Plaintiff fails to show its appropriateness based on the record presented. Essentially, Plaintiff fails to sufficiently meet its burden to show the relevancy and proportionality of its request; rather, the request is vague and general.

### IV.  CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Compel (ECF No. 31) is **DENIED** with leave to refile.

**IT IS SO ORDERED**.

 s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

December 8, 2023  
Florence, South Carolina

---

they know they are being videotaped").